James R. BLOHM, Appellant,

v.

Walter N. TOBRINER et al., Appellees.

No. 19052.

United States Court of Appeals
District of Columbia Circuit.

Argued April 14, 1965.

Decided July 16, 1965.

Petition for Rehearing En Banc
Denied Oct. 7, 1965.

Mr. Maurice A. Guervitz, Washington, D. C., for appellant.

Mr. John R. Hess, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellees.

Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges.

PER CURIAM.

Appellant became a member of the Metropolitan Police in 1951; was assigned to the motorcycle squad in 1953; and, while trying to apprehend a speeder on June 20, 1957, collided with another vehicle and was thrown 95 feet through the air. Taken unconscious to the hospital, his substantial injuries included what was first diagnosed as a skull fracture and ultimately as a severe cerebral concussion. He could not return to work for six months. Thereafter appellant, contrary to his experience prior to the accident, began to complain of headaches

and to lose time from work because of them. On March 14, 1960, Dr. Harrell, a member of the Board of Police and Fire Surgeons, characterized, in the police records, appellant's trouble as "Post Traumatic Headache." He was given, accordingly, several days of excess sick leave and his medical bills were paid from public funds—benefits which, in the one case, under statute and, in the other, under police regulations, were available only in the case of service-connected disabilities.

Eventually, however, the Police Department moved to force appellant's retirement, and he was directed to appear before the Police Retirement Board. The witness relied on there by the Department was Dr. Shapiro, also a member of the Board of Police and Fire Surgeons. He testified as to his initial belief that appellant's ailment was not a "post-traumatic type of headache," although he added immediately that "this did not eliminate the possibility." He referred to an examination of appellant by another physician, Dr. Rizzoli, which he thought of as confirmatory of his own view. He made no reference at any time to Dr. Harrell's diagnosis, nor was Dr. Harrell called as a witness. Appellant was the only other witness before the Board. In addition to telling of the accident and his subsequent headaches, he made clear that he was resisting forced retirement. The Board acted, on April 17, 1962, to retire appellant for disability not arising from the performance of duty. An appeal to the District Commissioners re-

sulted in an affirmance of the Board's action on October 18, 1962.

The issue presented to us is not whether it was wrong to retire appellant at all, but only whether his retirement was to be for disability not incurred in the performance of official duties. Under the statutes, the difference between that kind of retirement and one resulting from service-connected injury is that of retirement pay of 40 per cent of basic salary, in the one case, and 66⅔ per cent, in the other.[1]

██ Where it is the Police Department which initiates a proceeding to retire an officer against his will and for a disability which is alleged to be unrelated to his official service, the evidence of such lack of connection should clearly preponderate and be substantial and persuasive. Absent a record of which this can be said, the Department may be said to have failed to carry the burden fairly to be assigned to it under the statute. As appellant's history shows, policemen must of necessity engage in hazardous work as a part of their regular duties, and Congress has amply manifested a distaste for the resolution of doubts against them in the administration of laws passed for their protection. See Hyde v. Tobriner, supra, note 1; Crawford v. McLaughlin, 109 U.S.App.D.C. 264, 286 F.2d 821 (1960).

██ We are of the view that this record gave no clear warrant for separating appellant's accident from his later ills, however much it may be thought to af-

1. Compare Sections 526 and 527 of Title 4, D.C.Code (1961). On October 23, 1962—just five days after the Commissioners rejected appellant's appeal—there became law a bill passed by Congress (Public Law 87–857, 76 Stat. 1133), which made the 66⅔% benefit available "[i]n any case in which the proximate cause of an injury incurred or disease contracted by a member is doubtful, or is shown to be other than the performance of duty, and such injury or disease is shown to have been aggravated by the performance of duty to such an extent that the member is permanently disabled * * *." In the view we take of this record, we need not pursue the question of the proper construction of this new statute, or the extent of its retroactive application, if any. See Hyde v. Tobriner, 117 U.S.App.D.C. 311, 329 F.2d 879 (1964); Lovell v. Tobriner, 114 U.S.App.D.C. 65, 310 F.2d 870 (1962). Compare Zangardi v. Tobriner, 121 U.S. App.D.C. ——, 348 F.2d 370, decided June 22, 1965.

ford adequate support for the determination that appellant could no longer perform his duties—an issue which, in any event, is not before us on this appeal. Different considerations, in terms of evidentiary standards, perhaps underlie the question of whether a policeman is no longer qualified to serve as such, as opposed to whether the claimed disability is or is not to be attributed to the performance of official duties. If the Department elects not only to force his retirement but also at the lower classification, we think Congress intended that it be required to make a convincing showing of non-service-connected disability, at least in the face, as here, of a recent service injury of a serious and apparently relevant nature, the treatment of the subsequent disability by the Department as service-connected for many purposes, and its characterization as such by a Department physician whom the Department later decided not to call as a witness or even to mention to the Retirement Board or to the Commissioners. That showing does not emerge from this record; and, therefore, we think appellees failed to justify their assignment of appellant to the lower classification.[2]

The judgment appealed from is reversed, and the case is remanded with instructions to enter a judgment directing appellees to take such action as is necessary to effect appellant's retirement under the terms of Title 4, D.C.Code § 527 (1961).

It is so ordered.

2. As already indicated, the Department's principal witness, Dr. Shapiro, testified to his initial belief that appellant's headaches were not of a "post-traumatic type," but refused to reject the possibility His diagnosis after three years' observation of appellant, as appears from his testimony before the Retirement Board, was scarcely more positive:

Dr. Shapiro: This man has had very intensive treatment; he's had EEGs brain waves, he's had arteriograms, he's had a pneumoencephalogram, he's had nerve blocks; and neurologic examination didn't reveal anything, so both Dr.

Rizzoli and I feel that we cannot relate these headaches to the injury.

Mr. Howard: I see.

Dr. Shapiro: Although, as I said, no one can absolutely do this, but on a basis of all the medical data it is impossible to show that this is a result of same.

The Department had the burden of showing affirmatively that appellant's headaches were *not* the result of his earlier accident. When its own evidence in substance merely demonstates the difficulty of establishing the contrary, we cannot say that that burden has been met.