**Domenico F. MONICA, Plaintiff,**

v.

**Walter N. TOBRINER et al., Defendants.**

**Civ. A. No. 756–64.**

United States District Court
District of Columbia.

April 26, 1966.

Josiah Lyman, Washington, D. C., for plaintiff.

James Cashman, Asst. Corporation Counsel, Government of District of Columbia, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

The above-entitled action by a retired policeman seeking injunctive relief from an order of the Police and Firemen's Retirement and Relief Board (hereinafter the Board) retiring him from service "by reason of disability not incurred in the performance of duty" came on for trial without a jury on the 25th day of January 1966.

The following facts appear without dispute. The plaintiff was a member of the Metropolitan Police Department of the District of Columbia from April 1, 1952, until November 30, 1962, when, by an order of the Board issued on November 15, he was retired for disability not incurred in the line of duty. On February 27, 1963, this action of the Board was sustained on appeal by the Commissioners of the District of Columbia.

The plaintiff was retired under D.C. Code § 4–526 (1961) and has since received thereunder a pension in the amount of forty percent of his basic

salary at the time of retirement. He does not dispute the fact that the Board correctly found him to be disabled but urges that his disability is duty-related and that he should therefore have been retired under D.C. Code § 4–527 (Supp. V 1966) which provides for a pension in the minimum amount of 66⅔ percent of the retiree's basic salary. This latter section, the provisions of which are crucial to the resolution of the issues in this case, reads in part as follows:

> (1) Whenever any member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment and such injury or disease or aggravation permanently disables him for the performance of duty, he shall upon retirement for such disability, receive an annuity computed at the rate of * * * [not] less than 66⅔ per centum of his basic salary at the time of retirement.
>
> (2) In any case in which the proximate cause of an injury incurred or disease contracted by a member is doubtful, or is shown to be other than the performance of duty, and such injury or disease is shown to have been aggravated by the performance of duty to such an extent that the member is permanently disabled for the performance of duty, such disability shall be construed to have been incurred in the performance of duty.

■ Blohm v. Tobriner, D.C.Cir., 350 F.2d 785 (1965), a case which considered the meaning of § 4–527 when it consisted only of the textual material contained in subsection (1) of the present section, held that "[w]here it is the Police Department which initiates a proceeding to retire an officer against his will and for a disability which is alleged to be unrelated to his official service, the evidence of such lack of connection should clearly preponderate and be substantial and persuasive." 350 F.2d at 786. The usual presumption in favor of sustaining the findings of administrative bodies is therefore not to be indulged in a case where a policeman is retired for a disability not incurred in the line of duty, and the amended version of § 4–527 reinforces this interpretation.

■ The defendants have argued that the plaintiff's retirement was not "against his will" and that *Blohm* is therefore inapposite. The Court does not agree. On the one hand, what the Court of Appeals meant by involuntary retirement is not entirely clear. Sections 4–526 and 4–527 set up machinery for the retirement of policemen for disability, and, to the extent that disability is ordinarily not desired, any retirement under these sections may be seen as inherently involuntary in nature.

On the other hand, *Blohm* can be read more restrictively as classifying as voluntary those cases in which the disabled person institutes the retirement proceedings and otherwise actively courts retirement and as involuntary those cases in which the initiative is taken by the Board and the disabled person is displeased by the action which the Board contemplates. Even accepting this interpretation, the second category would have to include those cases in which the disabled party does not dispute the fact that he is disabled and ought to be retired but objects to the finding as to the duty-relatedness of his disability and its consequences upon his pension rights. This result is implied from *Blohm* itself in which no question was presented as to "whether it was wrong to retire appellant at all." 350 F.2d at 786. See also Carroll v. Tobriner, D.D.C., Feb. 8, 1966, 253 F.Supp. 87, in which the Court —which applied the reasoning of *Blohm* —commented, "There is no dispute but that plaintiff is *entitled* to disability retirement." (Emphasis added.)

■ The defendants rely upon certain statements of the plaintiff to show that his retirement was not involuntary, including the following:

> I'm sick of being around sadists, or who I think are sadists, sick people in the Department, I have to get away from them. I can't stand being around

them any more. * * * I'm fed up with all of this illness, my skin disease, my anemia and I'm tired and nervous and I can't do anything in the Police Department. I feel I should retire. I'm like a fighter who has thrown the towel in. [Transcript of proceedings before the Board, pp. 6, 9.]

Apart from the fact that these statements were made by the plaintiff to a doctor and therefore are less significant than similar statements before the Board would have been,[1] the statements are surely not inconsistent with an unwillingness to be retired for disability not incurred in the line of duty.[2] Such an unwillingness is sufficient to satisfy *Blohm's* requirements of involuntariness.

■ The Police Department having initiated a proceeding to retire the plaintiff against his will and a finding of disability having been made, the plaintiff is entitled to judgment unless the evidence of lack of duty-connection clearly preponderates and is substantial and persuasive. After considering the exhibits offered at the trial, and the briefs submitted by both parties, the Court is convinced that such substantial, persuasive and clearly preponderate evidence does not exist in this case. Even assuming *arguendo* that the plaintiff's disability stems from "a lifelong history of neurotic traits and tendencies"[3]—an assump-

tion of doubtful validity and one which the defendants, who conducted no psychological tests on the plaintiff when he became a policeman, may be estopped to assert—his condition was clearly aggravated by his service as a policeman. The life of a policeman is fraught with tension, and the record is replete with examples of physical injury to and emotional stresses upon the plaintiff which definitely exacerbated the anxiety which forced his retirement. The Board's acceptance of a contrary conculsion is arbitrary, and injunctive relief is therefore justified even under traditional concepts of the scope of judicial review.

In the light of the foregoing, the plaintiff is entitled to have judgment entered in his favor, requiring the defendants to set aside that portion of their order of November 15, 1962, which declared that the plaintiff's disability was not incurred in the line of duty and requiring them to retire the plaintiff for a service-connected disability under D.C.Code § 4-527 (Supp. V 1966) and to award him annuity and other benefits thereunder retroactively to November 30, 1962. The plaintiff is also entitled to an award of taxable costs and disbursements. It is so ordered.

Let this memorandum be considered the Court's findings of fact and conclusions of law.

---

1. The plaintiff's testimony before the Board conveys a significantly different impression. See, *e. g.,* Transcript of proceedings before the Board, p. 34, including the following colloquy:

   Q. Did you find it useful? Did you feel you were doing a job for the community?

   A. Yes, sir. I didn't feel any power or any of that kind of nonsense at all. As a matter of fact, I remember having an argument with a policeman on the way up to Number 8 Precinct. He says, "I can't wait to get out and lock some of these people up." I told him, "Man, keep away from me."

   Q. Did you take pride in the job?
   A. Yes, indeed. I really loved the job. I still love the job.

2. To a large extent, these statements are not even inconsistent with the desire to continue working as a policeman; they seem less an expression of hatred for police work than a confession that the plaintiff no longer considered himself capable of working effectively as a policeman.

3. Statement of Dr. Hyman D. Shapiro, a member of the Board of Police and Fire Surgeons, dated September 21, 1962, and found at Transcript of proceedings before the Board, p. 2.