Moses E. BREWINGTON, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW, Respondent.

No. 6029.

District of Columbia Court of Appeals.

Sept. 4, 1973.

Carleton U. Edwards, II, and Benjamin Greenspoon, Washington, D.C., for petitioner.

Earl A. Gershenow, Asst. Corp. Counsel, C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., for respondent.

Before FICKLING, KERN and GALLAGHER, Associate Judges.

PER CURIAM:

After two remands for appropriate findings of fact, D.C.App., 299 A.2d 145; D.C.App., 287 A.2d 532, this case is before us to review an Order involuntarily separating Officer Brewington (petitioner) from the Metropolitan Police Department based on disability not incurred in or aggravated by the performance of duty, pursuant to D.C.Code 1967, § 4–526.

Petitioner's primary contention is that the government failed to carry its burden of proof when it found that his disability (manic-depressive reaction) was not aggravated by the performance of duty as a police officer. It is conceded by petitioner that his disability was not contracted in the performance of duty. We affirm.

The government's evidence reveals the following: that petitioner had problems with authority (*i.e.*, pointing his revolver at some people while off duty), rhubarbs about tardiness, blocked a driveway with his car, feelings that he was addressed and treated in a derogatory manner by his superiors, feelings that the whole world was against him, ideas that his telephone was tapped by the Intelligence Division, that he was under police surveillance, and that someone was trying to harass him and eventually get him fired or send him to the Trial Board. The psychological examination revealed petitioner as a man with a history of depressive withdrawal, excitement and projection. According to the psychiatrist, this psychothymic illness means a type of personality structure in which there are marked up-swings and down-swings, great extremes of excitement and depression which can alternate. When we consider the respondent's Findings No.

2 through 6,[1] which are not in dispute with the evidence introduced in this record, we cannot say that respondent was in error when it found that petitioner suffers from a mental disorder "caused or aggravated by pressures of life stemming from his background and childhood" rather than from police duty.

We hold that respondent has carried the burden of proof with substantial evidence irrespective of the holding in Johnson v. Board of Appeals and Review, D.C.App., 282 A.2d 566 (1971), that the burden of proof is upon petitioner and not the government to show aggravation.

Affirmed.

I.  FINDINGS OF FACT

. . . . .

2. Officer Brewington was born on May 3, 1945. He was one of a number of illegitimate children. He disliked his mother because she had children out of wedlock. He had no meaningful father-son relationship and considered his father to be irresponsible. He was suspended from McFarland Junior High School, failed the 10th grade at Roosevelt High School, and dropped out of Phelps Vocational School in 1962. He resented parents who sought the assistance of teachers to help their children. He also resented anyone who was of the opinion that "drop outs" don't make it. His self concept is that of an illegitimate and a drop out. He served in the U.S. Navy from 1962 to 1966. While in the U.S. Navy, he was disciplined for chronic lateness, smoking in bed, sleeping on watch, and being absent without leave.

3. On November 5, 1969, Officer Brewington was admitted to the George Washington University Hospital as a result of a depressive reaction manifested by insomnia, fatigue, poor eating, lack of judgment, suicidal ideations, difficulty in keeping up with his daily tasks and routine, and feelings that everything was a burden on him. On November 18, 1969, after undergoing psychotherapy and chemotherapy, he was discharged and returned to duty.

4. Shortly thereafter, Officer Brewington was again admitted to the George Washington University Hospital for a depressive reaction. On December 31, 1969, after undergoing psychotherapy and chemotherapy, he was discharged and returned to duty.

5. On February 23, 1970, Officer Brewington was admitted to the Washington Hospital Center for a manic reaction. He had been accused of pointing his revolver at some people while off-duty, and had been involved in a "rhubarb" about blocking a driveway with his car and being late for work. He had problems accepting authority, felt that he was not treated as a man, that he was not respected or trusted, that he was not progressing according to his ability and potential, and that his superiors questioned his decisions and were determined to fire him. He was dischaged from the hospital on March 9, 1970, and suspended from duty by the Police Department.

6. On March 14, 1970, Officer Brewington, while visiting a female acquaintance, disrobed completely, drew his unloaded service revolver, and dry-fired at his clothing on the floor, saying that he wanted to die. He told the policeman, who responded to a disorderly complaint, that he intended to "cut his own throat, tear his heart out and unscrew his head" (R. 48). He also remarked about "his dead uncle's recognizing him, [and] allusions to the devil" (R. 48). As a result of this manic reaction, he was hospitalized at the Washington Hospital Center. The subsequent diagnosis was "manic depressive psychosis." His prognosis was "very guarded" and it was not anticipated that he would ever again be able to function satisfactorily as a police officer (R. 33). At the time of his admission, amphetamines were found in his urine, although there is no record that such drug had been prescribed for him.