368 A.2d 524 (1977)
Larry M. STONER, Petitioner,
v.
DISTRICT OF COLUMBIA POLICE AND FIREMEN'S RETIREMENT AND RELIEF BOARD, Respondent.
No. 9654.
District of Columbia Court of Appeals.
Argued November 4, 1975.
Decided January 14, 1977.
*526 Patrick J. Christmas, Washington, D.C., for petitioner.
Dennis McDaniel, Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.
Before KERN and HARRIS, Associate Judges, and STEWART, Associate Judge, Superior Court of the District of Columbia.[*]
HARRIS, Associate Judge:
Petitioner seeks review of an order of the Police and Firemen's Retirement and Relief Board in which he, an officer of the Metropolitan Police Department, was found to be unfit for further service on the grounds of a non-service connected disability, and was involuntarily separated without pension.[1] He challenges the Board's order as unsupported by the evidence and contrary to law. Our jurisdiction derives from D.C.Code 1973, §§ 11-722 and 1-1510. See Johnson v. Board of Appeals and Review, D.C.App., 282 A.2d 566, 567-68 (1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1175, 31 L.Ed.2d 232 (1972).[2]
We conclude that the order was based upon factual conclusions which are unsupported by substantial evidence, and reverse.
Petitioner was appointed to the Metropolitan Police Department on June 21, 1971. On April 21, 1973, while patrolling on a motor scooter, he was struck by a camper vehicle. He sustained multiple fractures and other serious injuries. Despite prolonged treatment, he never again was able to work as a police officer.[3] Following *527 hearings on February 13 and May 8, 1975, the Board made written findings (1) that petitioner was permanently disabled for further police duty; (2) that the nature of his disability was psychological;[4] and (3) that his disability was the manifestation of a pre-existing condition.[5] In light of these findings, the Board concluded that the disability was neither caused nor aggravated by the accident or the general performance of petitioner's police duties. The Board accordingly reached the conclusion that petitioner was not entitled to financial relief under D.C.Code 1975 Supp., § 4-527(1) and (2), and ordered that he be separated from police service without pension. See D.C.Code, 1973, § 4-529.
Petitioner does not contest the finding of permanent disability, nor does he seriously dispute the Board's conclusion that the ultimate disability is psychological in nature. Those findings are supported by substantial evidence. See D.C.Code 1973, § 1-1510(3)(E). Cf. Fisher v. Police & Firemen's Retirement & Relief Board, D.C.App., 351 A.2d 502 (1976); Morgan v. Board of Appeals and Review, D.C.App., 305 A.2d 243 (1973). What is challenged is the Board's treatment of the disabling post-traumatic neurosis and hysterical conversion reaction as mere manifestations of petitioner's pre-existing psychological profile, unrelated to the accident. Petitioner also challenges the Board's concomitant conclusion that relief under § 4-527(1) and (2) was unjustified as petitioner's condition was neither caused nor aggravated by the performance of his duties.
D.C.Code 1975 Supp., § 4-527, provides in pertinent part:
(1) Whenever any member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment and such injury or disease or aggravation permanently disables him for the performance of duty, he shall upon retirement for such disability, receive an annuity. . . .
(2) In any case in which the proximate cause of an injury incurred or disease contracted by a member is doubtful, or is shown to be other than the performance of duty, and such injury or disease is shown to have been aggravated by the performance of duty to such an extent that the member is permanently disabled for the performance of duty, such disability shall be construed to have occurred in the performance of duty. The member shall, upon retirement for such disability, receive an annuity. . ..
As we interpret the statute, § 4-527(1) provides for an annuity where the officer *528 is disabled by injury or disease incurred as a result of his service, or where his continued duty aggravates a service-connected disease or injury to the point of disability. Section 4-527(2) provides for an annuity if, where the cause of the disabling injury or disease is doubtful or external to the service, the claimant affirmatively shows that the condition became disabling as a result of service-related aggravation. See Lewis v. Board of Appeals and Review, D.C.App., 330 A.2d 253, 255-56 (1974).
The frequency with which this court has been asked to review the Board's determinations in cases involving psychiatric or psychological disabilities reflects the inadequacy of the causal analysis in the statutory language. It is well settled that the concept of "injury or disease" embraces impairments which are wholly nonorganic in nature. See, e. g., Crider v. Board of Appeals and Review, D.C.App., 299 A.2d 134 (1973); Lynch v. Tobriner, 237 F.Supp. 313, 316 (D.D.C.1965). See also Johnson v. Board of Appeals and Review, supra. What is not clear, however, either from the statute or case law, is the manner in which the test of "caused or aggravated" is to be applied to wholly mental or emotional impairments. In other words, under what circumstances may the annuity be awarded for a psychological disability which appears to be the product of both a service-related trauma (e. g., injuries received in an on-duty vehicular collision) and the individual officer's particular personality characteristics?[6]
As the concept of qualifying disabilities (i. e., "injury or disease") includes psychological impairments, it is obvious that relief in such cases is potentially available under either subsection of § 4-527. While subsection (2) imposes upon the claimant the burden of proving the necessary connection between his disabling condition and events or circumstances which occurred in the line of duty (see Lewis v. Board of Appeals and Review, supra, at 255-56), both provisions require the resolution of the difficult question of whether the condition which prevents the continued performance of the officer's duties may be characterized as the result of the traumatizing events of his service or merely as an unrelated manifestation of his underlying personality characteristics.[7]
In this case the Board reached the latter conclusion, finding that the condition which rendered petitioner disabled for further service was a "post-traumatic neurosis" in the form of a "hysterical conversion reaction". In denying a pension on the grounds that petitioner's disability was neither caused nor aggravated by the on-duty accident, the Board placed heavy reliance upon what it found to be his preexisting personality profile. The written findings of fact include the determinations that petitioner's psychological characteristics (described as "passive dependency") rendered him "more vulnerable than the average person", and that the ultimate disability "relate[s] back to his basic personality type".[8] We conclude that the mere *529 fact of such vulnerability (accepting its existence) does not by itself determine whether a particular psychological disability falls within the provisions of § 4-527.
Section 4-527 requires only that the disabling condition be caused or aggravated by the performance of duty, and makes no distinction as to the individual officer's particular characteristics or vulnerabilities. The mere fact that one officer may be more susceptible to disabling injury than another cannot be treated as dispositive without careful analysis of the circumstances or events which caused the asserted propensity to manifest itself in a disabling condition. Thus, for example, where it is shown that an individual officer was born with bones that are somewhat weaker than average, we do not believe that it was the intention of Congress that a disabling fracture occurring in the line of duty should be disregarded solely on the grounds that but for the officer's vulnerable skeletal structure the disability would not have been sustained. Cf. Hyde v. Tobriner, 117 U.S.App.D.C. 311, 329 F.2d 879 (1964); Lynch v. Tobriner, supra. The same rule must be applied to psychological as well as physical susceptibilities. Viewed in this perspective, the analysis properly turns on the question of whether the circumstances which caused the vulnerability to ripen into disability were a part of or external to the officer's service activities.
Respondent argues that the Board's conclusion that no relief was warranted under either subsection of § 4-527 is amply supported by the finding that "Officer Stoner suffered from a neurosis prior to his entry onto the Metropolitan Police Department which precludes him from doing further police duties." We recognize that our review is limited by the rule that the Board's conclusions on such matters are to be set aside only when unsupported by substantial evidence. See Fisher v. Police and Firemen's Retirement and Relief Board, supra; Morgan v. Board of Appeals and Review, supra, at 245; Johnson v. Board of Appeals and Review, supra, at 571. However, upon careful review of the entire record, we can find no substantial support for the Board's ultimate conclusion. On the contrary, there is nothing in the record to refute petitioner's contention, supported by the experts' uncontradicted testimony [cf. Souder v. Tobriner, 114 U.S.App.D.C. 267, 314 F.2d 272 (1963)], that the necessary relationship between the on-duty accident and the asserted disability does exist. Cf. Crider v. Board of Appeals and Review, supra.
The medical witnesses unanimously pointed to the accident as precipitating petitioner's disabling condition. Dr. Randolph Frank, of the Board of Police and Fire Surgeons, explained that the neurosis implied a "reaction to a specific traumatic episode." It was his opinion that petitioner's condition "may be considered the residual of the accident." He also indicated that petitioner's symptoms of tension, anxiety, and uncontrolled shaking were related to apprehension resulting from the accident and from the fear of a possible similar occurrence.
*530 Dr. Johnson, the psychiatrist, agreed on the central role of the accident. His reports made repeated reference to the "trauma" of the physical injuries which "triggered" intense fears in petitioner. In response to the Board's inquiry as to the latency of petitioner's neurosis and the possible input of childhood experiences and environmental influences, the doctor testified: "Well, every neurosis, of course, is based on the whole composite of one's life up to the time of thein this caseprecipitating factor, which happens to have been the accident."
We do not quarrel with the Board's conclusion that petitioner's basic personality profile was relevant to the ultimate disability. However, the record demonstrates that it was not petitioner's general psychological vulnerability which disabled him, but rather the accident-induced realization of the apparently underlying potential.[9] Dr. Johnson testified that the disputed personality weakness suffered by petitioner was somewhat typical of police officers in general, and he indicated that as far as he knew, but for the accident petitioner would have been able to continue with his normal police functions. He declared:
I, as the treating physician, the first time said that I saw a connection [between the accident and the disabling condition], and I say the same thing now. . . that there is a connection between the trauma. That this man was able to perform duty prior to the trauma; that he was not able to perform it afterwards.
The reports of two consulting physicians who found no indication of contribution by petitioner's past medical history reinforce that conclusion. Cf. Lewis v. Board of Appeals and Review, supra; Brewington v. Board of Appeals and Review, supra.
Respondent relies upon both the Lewis and Johnson cases, supra, which upheld findings that the disabilities resulting from the officers' personality disorders were non-service connected. Such reliance is misplaced, however. Those cases involved psychological impairments having extra-duty origins, or resulting from obscure and intangible influences such as "friction" among co-workers, and presented no demonstrable service-related trauma which clearly marked the beginning of the officer's inability to fulfill his duties. Even were we to conclude that the proximate cause of petitioner's disability was doubtful or external to his service, the record unmistakably demonstrates the requisite degree of aggravation to fall within the statutory scheme.[10]See D.C.Code 1975 Supp., § 4-527(2); Crider v. Board of Appeals and Review, supra; see also Monica v. Tobriner, 253 F.Supp. 851 (D.D.C.1966). We find no substantial support for the Board's conclusion that petitioner's disability was unrelated to his police service.
We recognize that the Board is burdened with a statutory standard which unquestionably is ill-suited to the resolution *531 of the difficult issues inherent in a claim of non-organic disability. Given the frequency of such claims, we hope that there soon may be more meaningful legislative guidance. Moreover, we do not wish to leave the impression that the requisite causation of a psychological disability necessarily is established by a showing of no more than a service-related trauma acting upon a particular personality type. On the central issue of "aggravation", the appropriate inquiry includes consideration of (1) the nature and degree of abnormality of the underlying psychological characteristics, (2) the likelihood that the disabling manifestations of such characteristics would have appeared despite the particular trauma or circumstances under consideration, and (3) whether there had been any previous indication that the disability (as distinct from the mere potential therefor) had begun to manifest itself as a result of circumstances external to the officer's service.[11]Cf. Lewis v. Board of Appeals and Review, supra. However, where as here, such inquiries reveal no precipitating event other than a serious on-duty accident, indicate no previous manifestation of disability, and do not suggest that but for the trauma the officer would not have continued to be able to fulfill his duties (despite his apparent psychological vulnerability), the conclusion that the officer's disability did not fall within § 4-527 cannot be sustained. Cf. Souder v. Tobriner, supra.
As we conclude that petitioner's psychological vulnerability does not preclude relief under § 4-527, and that the Board erred in its conclusion that his disability was neither caused nor aggravated by the accident, the Board's order separating petitioner without pension must be vacated.[12]
See Crider v. Board of Appeals and Review, supra; see also Blohm v. Tobriner, 122 U.S.App.D.C. 2, 350 F.2d 785 (1965).
Reversed and remanded.
NOTES
[*] Sitting by designation pursuant to D.C.Code 1973, § 11-707(a).
[1] D.C.Code 1973, §§ 4-527, -529.
[2] Pursuant to Commissioner's Order No. 73-724, dated December 12, 1973, effective June 1, 1974, 20 D.C.Reg. 525, 528 (1974), decisions of the Police and Firemen's Retirement and Relief Board constitute final administrative actions, and no longer lie within the jurisdiction of the Board of Appeals and Review. See 20 D.C.Reg. 1128 (1974).
[3] When thrown from his scooter, petitioner suffered broken bones in his wrist, arm, elbow, ankle, and foot, as well as injuries to his back and neck. Some of these injuries were not discovered until a month after the accident. Petitioner received extensive medical attention which apparently was not completely successful, as despite several attempts he was unable to return to even light duty status. There remain complaints of weakness in his ankle and wrist, as well as intermittent pain and numbness. On several occasions he was observed suffering uncontrolled shaking when subjected to stress. The medical witnesses could give no neurological or physiological explanation for such symptoms, but concluded that they were consistent with the diagnosis of post-traumatic neurosis and hysterical conversion reaction, the displacement of emotional conflicts into physical symptoms. The physical symptoms, although undeniably real, thus are of psychological rather than physical origin. The witnesses indicated that petitioner was experiencing substantial anxiety, and that he had lost confidence in his attending physicians and in his ability to adequately perform the duties of a police officer.
[4] The Board determined that petitioner had no continuing physical impairment as a result of the accident, yet decided on the basis of the psychological disorders of "post-traumatic neurosis" and "hysterical conversion reaction" that he was unfit for further service.
[5] Petitioner's psychological profile was described by a clinical psychologist as "passive dependent". Dr. Warren C. Johnson, a psychiatrist with the Board of Police and Fire Surgeons, testified that petitioner came from an average and stable family background, and explained that a profile of passive dependency is not atypical:

This might be a common finding in a lot of policemen. The very personality of people tending to come into the police department are people who are vulnerable in the sense that, if they do have an injury and they feel they can't do a good job and, therefore, don't have respect of their superiors or their peers any more, this tends to throw them in a kind of backward spiral, and they become more defensive and feeling more helpless and more helpless, and they lose their courage.
[6] The problems involved in analyzing the disabling condition by ascertaining the relative contributions of service activities and external factors such as the officer's personality are avoided where both the trauma which "triggers" the disability and the relevant psychological circumstances clearly are extrinsic to the officer's service (e. g., where the psychological impairment is the product of an off-duty injury or marital discord impacting upon a personality whose vulnerable characteristics predated the officer's appointment). See Brewington v. Board of Appeals and Review, D.C.App., 309 A.2d 112 (1973); Carroll v. Board of Appeals and Review, D.C.App., 292 A.2d 161 (1972).
[7] The problem with the statutory standard is that it contemplates the sort of clear and absolute causal relationships which are antithetical to the psychiatric sciences. For example, where, as here, the officer suffers from a disabling neurosis, the medical experts will explain that such a condition is the result of the composite or aggregate of the individual's experiences. The Board must then attempt to divine the ephemeral dlistinction between the relevant in-service and extrinsic influences upon the officer's psychological health.
[8] On the basis of his examination of petitioner, Dr. Johnson concluded: "[T]he trauma of the accident can be seen as upsetting to someone with Officer Stoner's personality and it triggered off intense fears. . . ." At the hearing the following colloquy took place:

BOARD [Chairman Battle]: . . . So, we are talking about his basic personality, not the accident, per se?
DR. JOHNSON: Right, right. Every accident happens to certain vulnerable people. People who deal with accidents often say, if you happen to hit the rear end of a car and hit a person and they got a whip lash, who is very vulnerable to whip lashes and very sensitive to injury, you are going to have a bigger suit on your hands than if you hit some guy who has got a big strong neck and is used to accidents. . .. I mean, everybody has different vulnerability to injury. . . . It's a matter of . . . whether or not this vulnerability is more than average, or less than average, or whether or not certain kinds of injurieslike flying through the air 35 feet might just sort of frighten a lot of people. I don't know that that would be something that a lot of people can take.
[9] We find it significant that the Board determined that petitioner's disabling condition conformed to the diagnosis of "post-traumatic neurosis" and "hysterical conversion reaction". The very labels of such psychological impairments suggest a relationship with petitioner's on-duty injuries. Moreover, it was the symptoms of these post-traumatic disorders anxiety, shaking, and intermittent pain which rendered petitioner disabled for further duty.
[10] The Board's conclusions of law include the determination that relief was unwarranted under either subsection (1) or subsection (2) of § 4-527. As we have decided that the record supports no other conclusion than that the "aggravation" of the on-duty accident elevated petitioner's psychological characteristics to the level of a disabling impairment, it is unnecessary for us to decide whether the combined effect of the service-related trauma and the pre-existing psychological circumstances involved a causation of sufficient obscurity to require analysis under the latter subsection, with its attendant burden of proof. See Lewis v. Board of Appeals and Review, supra; Johnson v. Board of Appeals and Review, supra.
[11] While the record before us contains no suggestion that petitioner was psychologically unacceptable at the time of his entry into the service, or that his condition had not, in fact, sufficiently deteriorated to warrant the conclusion that he was permanently disabled, it would appear prudent to increase the attention given to the initial psychological screening of all police candidates, as well as the care with which it is determined that a particular officer has suffered a complete and permanent disability. Once an individual is accepted as fit to become a police officer, and thereafter it is conclusively determined that he has become irreversibly disabled (as opposed to merely unfit for nonmedical reasons), if the circumstances precipitating the disabling condition appear to be service-related, it is difficult to avoid the mandate of § 4-527.
[12] At oral argument, petitioner's counsel acknowledged that our role terminates with a reversal and remand; it remains for the Board to reapply itself to the case. See, e. g., Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940); McBride v. Smith, 405 F.2d 1057 (2d Cir. 1968). But see Hill v. Unemployment Compensation Board, D.C. App., 302 A.2d 226 (1973); see id. at 230 (Harris, J., concurring in part and dissenting in part).