370 A.2d 1322 (1977)
Eugene F. MORGAN, Petitioner,
v.
DISTRICT OF COLUMBIA POLICE AND FIREMEN'S RETIREMENT AND RELIEF BOARD, Respondent.
No. 9515.
District of Columbia Court of Appeals.
Argued May 12, 1976.
Decided February 24, 1977.
*1324 Charles H. Schulze, Washington, D.C., argued for petitioner; Patrick J. Christmas, Washington, D.C., was on the brief.
S. Perry Jones, Asst. Corp. Counsel, Washington, D.C., with whom Louis P. Robbins, Acting Corporation Counsel, Washington, D.C., when the brief was filed, and Richard W. Barton, Asst. Corporation Counsel, Washington, D.C., were on the brief, for respondent.
Before KERN and HARRIS, Associate Judges, and REILLY, Chief Judge, Retired.
HARRIS, Associate Judge:
Petitioner challenges as unsupported by substantial evidence and contrary to applicable law an order of the Police and Firemen's Retirement and Relief Board (Retirement Board) retiring him from the Metropolitan Police Department for a non-service-connected disability. We affirm.
Petitioner was appointed to the Police Department in May of 1969. During his first year of service, he sustained two on-duty injuries. In November of 1969, he was struck on the head, shoulders, and back when a garage door fell on him. In March of 1970, he reinjured his back when he fell down a flight of stairs.
Following three hearings in 1971, the Retirement Board found that those injuries had not rendered petitioner disabled for further service. That conclusion was sustained by this court as being supported by substantial evidence in Morgan v. District of Columbia Board of Appeals and Review, D.C.App., 305 A.2d 243 (1973).[1] Petitioner's complaints of pain and discomfort persisted, however, and he never returned to full duty. In May of 1974 he requested that his case be resubmitted to the Retirement Board. After receiving considerable further evidence, including the results of a psychiatric evaluation by the Board of Police and Fire Surgeons, the Retirement Board found that petitioner was suffering from a psychoneurosis (described as a "conversion reaction") which permanently disables him for further police service. Concluding that the disability was a direct manifestation of personality characteristics which predated and were unrelated to his employment, the Retirement Board ordered that petitioner, who had completed five years of service, be retired on an annuity of 40% based upon a non-service connected disability. D.C.Code 1973, § 4-526. Neither *1325 party has challenged the Retirement Board's finding with respect to the psychological nature of petitioner's disability, or its conclusion that such condition has rendered him permanently unfit for service. The issue before us is whether, within the meaning of D.C.Code 1976 Supp., § 4-527, the Retirement Board properly concluded that petitioner's disabling psychoneurosis was neither caused nor aggravated by his on-duty accidents.
In a similar case, Stoner v. District of Columbia Police and Firemen's Retirement and Relief Board, D.C.App., 368 A.2d 524 (No. 9654, 1977), we recently noted that while nonorganic disorders (such as petitioner's psychoneurosis) fall within the statutory concept of a compensable "injury or disease," the legislative standard specifies a causal analysis which is ill-adaptable to wholly psychiatric impairments. Id., at 528 and nn. 6 & 7. While the statute requires that a sharp distinction be drawn between those disabilities "caused or aggravated" by service activities and those resulting from extrinsic circumstances, nonorganic impairments such as neuroses frequently are the aggregate products of a broad range of causative factors, both subtle and obvious, some of which are related to the officer's service and some of which are not.[2] Where there is credible expert evidence establishing that both internal and external circumstances medically contributed to the ultimately disabling condition, the Retirement Board is obligated to consider all the relevant factors, determine their relationship to each other, and, if possible, evaluate their relative causative significance.[3]
In Stoner, we rejected the notion that where a case involves a medically significant on-duty trauma, the Board may deny statutory relief upon a bare finding that the claimant had a preexisting potential for psychological disability. However, the converse principle is equally true: the mere showing of an on-duty incident which contributed to (e. g., "triggered") the disability does not end the Retirement Board's analytical responsibilities or conclusively establish entitlement to disability benefits. Until such time as the legislature provides further guidance, the Board must go beyond the language of the statute and apply a balancing test in resolving those claims for annuities which are based upon conditions involving mixed causation. Moreover, in light of the humane purpose of the legislation, a denial of benefits should be based upon a proper determination that the causative significance of the preexisting or extrinsic circumstances contributing to the disability clearly outweighs that of the on-duty events or conditions.[4]Cf. Stoner v. *1326 Police and Firemen's Retirement and Relief Board, supra; Hyde v. Tobriner, 117 U.S. App.D.C. 311, 313, 329 F.2d 879, 881 (1964); Lynch v. Tobriner, 237 F.Supp. 313, 316 (D.D.C.1965).
Applying these principles to this case, we conclude that the challenged order must be sustained. We are mindful of the well-established principle that the Retirement Board's factual determinations are not to be set aside unless unsupported by substantial evidence. See D.C.Code 1976 Supp., § 1-1510(3)(E); Stoner v. Police and Firemen's Retirement and Relief Board, supra, at 527 (and cases cited). Moreover, where the causation of the disabling condition is either obscure or includes factors external to the officer's service, the claimant bears the burden of establishing the necessary degree of "aggravation" by his service activities.[5]See Lewis v. Board of Appeals and Review, D.C.App., 330 A.2d 253, 255-56 (1974); Johnson v. Board of Appeals and Review, D.C.App., 282 A.2d 566, 570 (1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1175, 31 L.Ed.2d 232 (1972). See also Crider v. Board of Appeals and Review, D.C.App., 299 A.2d 134 (1973). Cf. Stoner v. Police and Firemen's Retirement and Relief Board, supra, at 530 n. 10. Here the origins of petitioner's psychoneurosis were thoroughly explored in five hearings at which the Retirement Board received documentary and testimonial evidence from numerous expert witnesses representing a variety of medical specialties. The record reflects a claimant who, as a result of significant emotional difficulties predating and unrelated to his employment as a police officer, perhaps never should have been appointed to the force. It further reflects a claimant who, after brief service, suffered relatively minor physical injuries (which left no organic residual), but who, for reasons directly related to his unusual emotional vulnerability, apparently developed a disproportionately severe psychological reaction.[6] Taken as a whole, the evidence shows that whatever causative significance may be attached to the catalytic effect of the on-duty accidents is greatly outweighed by the significance of petitioner's preexisting psychological deficiencies.[7] As the Board's findings and ultimate conclusion are supported by substantial evidence, we must affirm.
Affirmed.
NOTES
[1] The evidence then considered by the Retirement Board indicated that petitioner retained no neurological or physiological impairment from his injuries. His physical symptoms were described as an "emotional overlay", that is, of psychological origin. 305 A.2d at 243-45.
[2] In this case, for example, there is substantial evidentiary support both for petitioner's claim that his neurosis was "caused" (i. e., "triggered") by his two on-duty accidents, and for respondent's contention that the disability was "caused" by the claimant's preexisting psychological vulnerability (i. e., that the neurosis was merely a realization of an undisputed potential which existed before petitioner entered the service). Indeed, one of the expert witnesses described petitioner's condition as the "inseparable" combination of both extrinsic and the in-service circumstances.
[3] We suggested in Stoner that the issue of the relative significance of the claimant's preexisting vulnerability be approached from the following perspectives: "(1) the nature and degree of abnormality of the underlying psychological characteristics, (2) the likelihood that the disabling manifestations of such characteristics would have appeared despite the particular trauma or circumstances under consideration, and (3) whether there had been any previous indication that the disability (as distinct from the mere potential therefor) had begun to manifest itself as a result of circumstances external to the officer's service." Stoner v. Police and Firemen's Retirement and Relief Bd., supra, at 531.
[4] Petitioner relies on dicta in several older decisions for the proposition that in such cases the evidence must be viewed in the light most favorable to the claimant, and that there is a presumption in favor of the officer (i. e., a presumption that the disability was service-connected). See, e. g., Blohm v. Tobriner, 122 U.S.App.D.C. 2, 3, 350 F.2d 785, 786 (1965). While we agree that the humane purpose of the statute requires a liberal construction, we do not read the cited decisions or subsequent case law as supporting petitioner's procedural embellishments on the general principle. Where the causation of the impairment is obscure or mixed, § 4-527(2) requires that the claimant show the necessary connection between his service and the disability; hence there can be no "presumption" on this point. In cases such as this, where the officer's claim of service-related disability has been countered by strong and credible evidence that external factors played a medically significant role in the disabling condition, it then falls to the claimant to demonstrate the relative causative importance of the on-duty events or conditions. See Lewis v. Board of Appeals and Review, D.C.App., 330 A.2d 253 (1974); Johnson v. Board of Appeals and Review, D.C.App., 282 A.2d 566 (1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1175, 31 L.Ed.2d 232 (1972). See also Crider v. Board of Appeals and Review, D.C.App., 299 A.2d 134 (1973).
[5] We view as significant the statutory language requiring the claimant in cases of mixed or obscure causation to make an affirmative showing that the performance of his duties "aggravated" his underlying condition "to such an extent" that he became permanently disabled. D.C.Code 1976 Supp., § 4-527(2).
[6] The expert witnesses portrayed petitioner as an individual who was unable to adjust to his role and responsibilities as a police officer. While one witness discounted the possibility of conscious malingering, there was evidence of hypochondriacal tendencies, that is, petitioner was unusually preoccupied with his health and, for reasons of secondary emotional gain, had adopted a "sick or patient" role.
[7] In contrast, the Stoner case presented an individual of whom there had been no doubt as to his psychological qualification for employment, no previous manifestation of significant emotional difficulties, and clear testimony that despite the claimant's particular vulnerability (a condition which was described as typical of police officers in general), he would have been able to continue his satisfactory fulfillment of his responsibilities as a police officer had he not sustained severe on-duty injuries.