James L. LIBERTY, Petitioner,

v.

POLICE AND FIREMEN'S RETIRE-
MENT AND RELIEF BOARD et
al., Respondent.

No. 13648.

District of Columbia Court of Appeals.

Argued Feb. 28, 1979.

Decided Sept. 4, 1979.

John F. Markuns, Washington, D. C., for petitioner.

Margaret L. Hines, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before GALLAGHER and FERREN, Associate Judges, and HOOD, Chief Judge, Retired.*

FERREN, Associate Judge:

This case presents the question whether there is substantial evidence to support the findings and conclusions of the Police and

* Chief Judge Hood, Retired, participated at oral argument but died on July 17, 1979, before publication of the opinion.

Firemen's Retirement Board that a disabled patrolman's coronary artery disease had not been incurred in or aggravated by the performance of duty. See D.C.Code 1973, §§ 4–527 (1) and (2). Because the record does not support the Board's findings that family history was "the most significant factor" and that "police duties played no part" in the patrolman's disabling condition—and because we cannot say that the Board did not rely on these findings in denying the patrolman's disability claim under § 4–527—we remand for further proceedings.

## I.

Petitioner John L. Liberty joined the Metropolitan Police Department on May 8, 1969, and served as a patrolman for nine years. In August 1977 he visited the Police and Fire Clinic, complaining of chest pains and aching in the lower extremities. Subsequent examinations indicated that he had ectasia of the coronary arteries, a disease involving dilation of the arteries. Because the blood slows as it passes through dilated arteries, persons suffering with ectasia run an increased risk of blood clots. Upon consideration of Liberty's condition, the Board of Police and Fire Surgeons concluded that he was permanently disabled and recommended his retirement. The Board of Surgeons, however, was unable to determine whether Liberty's condition was linked to his police duties.

At the recommendation of the Board of Surgeons, the Police and Firemen's Retirement Board (the Board) conducted a hearing on March 2, 1978, to determine whether Liberty should be retired. The Board incorporated his medical records and the report of the Board of Surgeons into its record and heard testimony from the petitioner and Dr. W. Howard Yeager, a member of the Board of Surgeons. On the basis of this testimony, the Board found that the causes of coronary artery disease are unknown, but that "risk factors having significance in this case are family histories . . ., smoking, obesity, hypertension and stress." The Board noted that Liberty had smoked ap-

proximately a pack and a half of cigarettes a day for ten years, was overweight, and had hypertension of mild to moderate severity. It also observed that all of these factors had some bearing on the development of the patrolman's condition. In addition, the Board specifically found that the "most significant factor" in this case was Liberty's family history, and that "[p]olice duties did not play any part" in the condition. On the basis of these findings, the Board concluded that Liberty should "be retired from the Metropolitan Police Department under D.C. Code 1973, § 4–526, by reason of disability not incurred in or aggravated by the performance of duty." See D.C.Code 1973, §§ 4–527(1) and (2).

Without challenging the Board's conclusion that he should be retired, Liberty petitioned this court for review, asserting that the decision that his condition was not duty related was unsupported by substantial evidence in the record. D.C.Code 1978 Supp., § 1–1510; D.C.Code 1973, § 11–722.

## II.

■ An agency's findings of fact are conclusive on this court unless unsupported by substantial evidence in the record. *Morgan v. District of Columbia Police and Firemen's Retirement and Relief Board*, D.C. App., 370 A.2d 1322, 1326 (1977); D.C.Code 1978 Supp., § 1–1510. Substantial evidence is " 'more than a mere scintilla' " of evidence; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Jameson's Liquors, Inc. v. District of Columbia Alcoholic Beverage Control Board*, D.C.App., 384 A.2d 412, 418 (1978) (citations omitted). In applying the substantial evidence test, this court may not substitute its judgment for that of the Board. *Coakley v. Police & Firemen's Retirement and Relief Board*, D.C.App., 370 A.2d 1345, 1347–48 (1977); *Schiffman v. District of Columbia Alcoholic Beverage Control Board*, D.C.App., 302 A.2d 235, 238 (1973); rather, the court must review the portions of the record designated by the parties to determine whether the agency could fairly and reasonably find the

facts as it did. D.C.Code 1978 Supp., § 1–1510; *see Braniff Airways, Inc. v. C.A.B.*, 126 U.S.App.D.C. 399, 408, 379 F.2d 453, 462 (1967).

In this case Officer Liberty asserts that the following findings of the Board are unsupported by substantial evidence:

9. *Police duties did not play any part in subject officer's condition.* Tr. 17, 18. *The most significant factor in this case is subject officer's family histories.* Tr. 18

19. The Board of Police and Fire Surgeons recommended that Officer Liberty is permanently disabled for the further performance of police duty. They were unable to make a recommendation regarding the linkage of police duty to his condition. Tr. 9, 10. The Board finds that *there is no connection in this case between subject officer's police duties and his medical condition.*

22. The Board specifically finds that *the work of a police officer, as it is known to be, played no part in the development of subject officer's condition.* Tr. 17, 24, 29, 30, 33. Further, subject officer did not think that any personality problems with the job caused any pressures to aggravate his blood pressure or coronary artery disease problem as he got along well with his co-workers and supervisors. Tr. 24. The Board, based on a review of the full record in this case, concurs that *police duties played no part in subject officer's condition.* [Emphasis added.]

■ The Board's Finding 9 that "family histories" comprise "the most significant factor" in Liberty's case is not supported by substantial evidence. Dr. Yeager, the only expert witness, testified that ectasia was a "relatively newly diagnosed condition" and that its causes were "uncertain." He explained that the condition was probably caused by the same factors that cause artherosclerotic plaque in the coronary arteries; *i. e.*, stress, smoking, hypertension, and obesity—all factors which the doctor suggested were contributing causes in this case. In addition, Dr. Yeager mentioned that the fact that Liberty's grandmother had been diabetic and that his mother had hyperten-

sion "may have some significance." The patrolman's medical records state that there was no definite family history of coronary artery disease.

Based on all the evidence of record, we conclude that there is not " (such relevant evidence as a reasonable mind might accept as adequate,' " *Jameson's Liquors, Inc., supra* at 418 (citations omitted) to show that "the most significant factor" in this case is the patrolman's "family histories." Far from testifying to that effect, Dr. Yeager said that it would be "difficult to prove" that congenital bearing had any effect, and he listed several other factors which he believed might have contributed to the disease. The fact that the officer and his mother both had hypertension—a believed risk factor in ectasia—adds little support to the Board's conclusive finding.

The Board's Findings 9, 19, and 22 that police duties "did not play any part" or "played no part" in Liberty's condition are also not supported by substantial evidence. The record shows clearly that the Board of Surgeons was unable to determine whether this patrolman's condition was—or was not—linked to his police duties. At the hearing, Dr. Yeager testified that police duties were probably one of many factors that contributed to Liberty's condition, explaining that stress was a risk factor for coronary artery disease and that a policeman's duties might cause stress. He added that stress also might have contributed to the officer's smoking. Furthermore, Liberty himself explained that he had been a patrolman in the Seventh District of Southeast—"an area where," according to the Board, "they have some problems." Liberty observed that the work of a policeman was dangerous in most instances and that he had worked for short periods in an even more dangerous position as an undercover agent. He also advised the Board, however, that he had no personality problems with co-workers or supervisors that could aggravate his blood pressure. We conclude that the evidence shows, at most, that stress from police duties may—or may not—have been a cause of Liberty's condition; there is

no basis in the record for an unequivocal finding that police duties "played no part."

In summary, where all the evidence of record indicates that the cause of a disease is uncertain, but that stress is probably a factor—and that a patrolman's duties involve stress—a finding that such duties "played no part" in the patrolman's condition is not supported by substantial evidence.[1]

### III.

■ This court's determination that the Board made erroneous findings is not the end of the analysis, for D.C.Code 1978 Supp., § 1–1510 provides that the court "may invoke the rule of prejudicial error" when reviewing administrative decisions. See Jameson's Liquors, supra at 419; Braniff, supra at 411, 379 F.2d at 465. More specifically, a reviewing court need not reverse when the Board has made an unsupported finding "if the finding is demonstrably subsidiary and the agency does not purport to rely on the finding." Braniff, supra at 126 U.S.App.D.C. at 412, 379 F.2d at 466. Remand is necessary, however, if "'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous findings or inferences removed from the picture.'" Id. (citation omitted); see Dietrich v. Tarleton, 154 U.S.App.D.C. 47, 49, 473 F.2d 177, 179 (1972) (when an agency's decision is based on several grounds and one or more is invalid, a reviewing court must appraise whether the invalid ground infected the entire decision); cf. Johnson v. United States, D.C.App., 398 A.2d 354, 366 n.10 (dictum) (where error is found, case is to be remanded to agency out of hand unless error is de minimus) (interpreting Braniff, supra). In some cases, the court's decision whether an agency's finding was prejudicial error may depend upon whether the case was close, see Braniff, supra, 126 U.S.App. D.C. at 413, 379 F.2d at 467, but the reviewing court must be aware of its "limited ability . . . to assume as a judicial function, even for the purpose of affirmance, the distinctive discretion assigned to the agency." Id. at 412, 379 F.2d at 466; see Jameson's Liquors, Inc., supra at 420.

■ In this case, the ultimate issue is whether Liberty's disabling condition was caused or aggravated in "the performance of duty." D.C.Code 1973, §§ 4–527(1) and (2). We cannot say that the unsupported findings that family histories comprised the "most significant factor," and that police duties "played no part," were "demonstrably subsidiary" and that the Board did "not purport to rely" on them. Braniff, supra at 412, 379 F.2d at 466. Substantial doubt exists as to whether the Board would have reached its conclusions of law and decision without relying on these findings. Thus, we must remand for further proceedings. See Citizen's Association of Georgetown v. District of Columbia Board of Zoning Adjustment, D.C.App., 365 A.2d 372, 376 (1976) (if findings are clearly inaccurate, court has no choice but to remand). In doing so, we indicate no opinion as to whether the record warrants disability retirement under § 4–527, rather than § 4–526; we hold only that Findings 9, 19, and 22 are unsupported by substantial evidence.[2]

*Remanded for further proceedings.*

---

1. The Board's Finding 22 that Liberty "got along well with his co-workers and supervisors" does not negate the evidence of stress associated with his duties as a patrolman.

2. If the Board finds that the "proximate cause" of the claimant's disabling condition is "doubtful, or is shown to be other than the performance of duty," D.C.Code 1973, § 4–527(2), the claimant has the burden of demonstrating that his condition has been "aggravated by the performance of duty to such an extent that [he] is permanently disabled." Id.; see Morgan, supra at 1325–26; Lewis v. Board of App. & Rev., D.C.App., 330 A.2d 253, 255–56 (1974); Johnson v. Board of App. & Rev., D.C.App., 282 A.2d 566, 570 (1971), cert. denied, 405 U.S. 955, 92 S.Ct. 1175, 31 L.Ed.2d 232 (1972). On the other hand, if the claimant presents "evidence pointing to 'original causation' being due to a series of injuries admittedly incurred in the performance of official duty," Crider v. Board of App. & Rev., D.C.App., 299 A.2d 134, 135 (1973), the opposing side has the burden of offering "evidence disproving the logical inference that the ensuing disability was the long term result of such injury." Johnson, supra at 570.