James B. SAUNDERS, Petitioner,

v.

POLICE AND FIREMEN'S RETIRE-
MENT AND RELIEF BOARD,
Respondent.

No. 81–198.

District of Columbia Court of Appeals.

Argued Jan. 21, 1982.

Decided March 24, 1982.

---

Charles W. Halleck, Washington, D. C., for petitioner.

William J. Earl, Jr., Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before NEWMAN, Chief Judge, and KERN and PRYOR, Associate Judges.

1. Although petitioner's ankle was immobilized by a cast for over three months, this did not result in proper healing. Subsequently, corrective surgery was performed in February 1975,

PER CURIAM:

Petitioner appeals from a decision of the Police and Firemen's Retirement and Relief Board (Board) pursuant to D.C.Code 1973, § 4–530 finding him to have recovered from his disability and thereby terminating his annuity. We conclude that the Board has misallocated the burden of proof and that its findings of fact are not supported by "substantial evidence." We reverse.

Petitioner Saunders was formerly a police officer with the Metropolitan Police Department. In August 1974, petitioner was struck by a car while riding his motor scooter, and his left ankle was severely fractured.[1] Dr. Victor Esch, Member, Board of Police and Fire Surgeons, in a report of December 1975, recommended that petitioner be retired. He was subsequently retired (by the Board) as of March 31, 1976.

On November 9, 1978, petitioner was examined in the Police and Fire Clinic for his two-year medical review, which is required for all annuitants. D.C.Code 1973, § 4–533; Police and Firemen's Retirement and Relief Board Regulations, § XIII(a). Two of the three physicians[2] noted that petitioner walked with a normal gait and could raise up on his toes and rock on his heels without difficulty. They also suggested an orthopedic consultation with Dr. Charles Epps. The third examining physician, Dr. Everlee Franks, noted in a separate report that petitioner had no atrophy of the left calf, was able to touch his toes and do a deep knee bend, but that there was a slight bony deformity on the left ankle. Dr. Franks also stated, "[petitioner] walked on his toes with an exaggerated limp. He is observed to walk with a normal gait when fully dressed and unaware he is being observed."

Petitioner was then examined by Dr. Epps on December 1, 1978. This was the last examination of petitioner by a physician before the hearing conducted on June 24, 1980, in this case which is now the subject of our review. During his examina-

when a metal screw and a bone graft were applied to mend the ankle.

2. Drs. Samuel Mitchell and Eugene Short.

tion the doctor noted that petitioner expressed "that the left ankle was tender anteriorly and laterally. When he ambulated, he experienced pain in the back of the ankle." Dr. Epps' examination indicated that petitioner's "left ankle was tender over an incision situated over the lateral maleolus." In addition, in his diagnosis, Dr. Epps observed that there were some limitations of motion in petitioner's ankle but that "there are very minor changes in his range and measurements."

> I would not expect that these minor limitations would render this man unemployable. If it is the judgment that he cannot return to regular police work, I see no contraindications to his performing in a light duty capacity which would not require his being on his feet a full eight hour day. [Record at 62.]

Relying upon these reports from Drs. Mitchell, Short, Franks and Epps, the Board of Police and Fire Surgeons in a meeting on September 21, 1979, recommended "that [petitioner] does not seem to be disabled at this time for limited duty, but would be unable to perform full duty as a police officer." On January 17, 1980, the Retirement and Relief Board voted to schedule petitioner for a show cause hearing. The hearing was subsequently held on June 24, 1980.

### I.

■ Initially, we note that "the board must bear the burden of demonstrating with substantial evidence that petitioner had recovered." *Kea v. Police and Firemen's Retirement and Relief Board*, D.C. App., 429 A.2d 174, 175 (1981). In *Kea* we held that the Board had committed reversible error by placing upon that petitioner the burden of demonstrating "with reasonable medical certainty that he was not recovered from the disability for which he was retired." *Id.* at 175. Similarly, in this case, the Board improperly placed the burden of

proof on petitioner in stating that "[t]his retired officer comes before the Board to show cause why he has not recovered from the disability for which he was retired." Finding of Fact No. 2. While the Board did not use the exact language in this finding which we deemed to constitute reversible error in *Kea*, it is nevertheless clear that the Board improperly placed the burden of proof on petitioner at the initiation of the hearing.[3] This constituted reversible error.

### II.

An equally compelling ground of reversal, however, is the lack of substantial evidence to support the Board's finding that "the objective manifestations indicate that [petitioner] is no longer disabled from performing useful and efficient service for the department from which he retired." Finding of Fact No. 13. If the Board within its discretion finds it appropriate to initiate new proceedings against petitioner, we believe that such proceedings should be based on a reasonably up-to-date medical examination. Such an examination would provide the "reliable, probative and substantial evidence" required to support a Board determination in a "contested case." D.C. Code 1973, § 1–1509(e).

■ An agency's findings of fact are conclusive on this court unless unsupported by substantial evidence in the record. D.C. Code 1973, § 1–1510(3)(E). *Liberty v. Police and Firemen's Retirement and Relief Board*, D.C.App., 410 A.2d 191, 192 (1979). Substantial evidence is " 'more than a mere scintilla' of evidence"; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Jameson's Liquors, Inc. v. District of Columbia Alcoholic Beverage Control Board*, D.C.App., 384 A.2d 412, 418 (1978). We may not substitute our judgment for that of the Board in applying the substantial evidence test. *Liberty, supra* at 192. Peti-

---

**3.** Further indication that the Board had improperly placed the burden of proof on petitioner is found in Finding of Fact No. 13, where the Board stated:

Notwithstanding, the pensioner's complaints of pain, neither the medical facts, which include reports spanning 4 years ... nor the testimony of Dr. Esch *can support a finding of continued disability.* (Emphasis added.)

tioner challenges the overall conclusory findings of the Board in several respects.

Dr. Esch, the physician who recommended that petitioner be retired in 1975, was the only physician to testify at the June 1980 hearing. His testimony regarding the reliability of the 18-month-old medical reports by Drs. Mitchell, Short and Franks (examination of November 9, 1978), and Dr. Epps (examination of December 1, 1978) was very similar to the medical testimony we found insufficient to support various Board findings in *Liberty. Id.* at 193. (Only medical expert testified that ectasia, which the Board found to be the "most significant factor" in petitioner's disabling condition, was a "relatively newly diagnosed condition" and that its causes were "uncertain.") When questioned as to whether petitioner could "work in a position . . . as an officer with the Metropolitan Police Department . . . in a broad category or job," Dr. Esch answered that such a question was "kind of . . . unfair . . . because I have not had a chance to talk to the officer since I saw him five years ago, and I'd only be sort of guessing . . . ." Further, and most indicative of the unreliability of the evidence before the Board, Dr. Esch stated that "[t]here's one thing that bothers me about this whole case. That is, it's a stale case. I'd feel much happier if he had an up-to-date orthopedic evaluation." Again, when questioned whether his opinion recommending that petitioner be retired in 1975 had changed, Dr. Esch reemphasized: "I have not had the opportunity to examine him, and *the latest medical data is hopelessly out of date.*" (Emphasis added.)

The decision of the Retirement Board consisted of 13 Findings of Fact, including:

4. Petitioner testified at the hearing that ". . . the pain is always there . . . [during] long sitting my feet swell . . . when the weather is bad it aches . . . ." When asked about his daily activities, petitioner answered that ". . . most of my days are spent, I usually sit at home on my sofa laying on my back with my feet up . . . I don't work . . . but it ain't because I don't want to work, it's just because I can't work because of my leg . . . but I don't know of no job that they have on the Police Department that I can do and do it constantly, because of the swelling in my ankle."

Now there is no problem with ambulation . . . the physician said that the pensioner could drive a car, probably run and traverse steps . . . the fracture won't get any worse. [Finding of Fact No. 10.]

In fact, Dr. Esch testified that: "I have not seen him run. I don't know whether he can run or not." Further, when again asked whether petitioner could run, the following exchange occurred:

A. He's got running shoes on. I assume he can run.

Q. I wouldn't assume anything, doctor. If we don't assume that he can run because he has running shoes on, do you have any reason as to whether he can or cannot run effectively?

A. I don't know. I haven't seen him in five years, so I couldn't really say what he can do or what he can't do now.

As to the absence of any problem with ambulation, Dr. Esch mistakenly believed he was relying on a report of an examination of October 1, 1979. However, following further questioning, Dr. Esch realized that this was a report written by Dr. Dyer, Chairman, Board of Surgeons, which was quoting from Dr. Epps' report of an examination which occurred on December 1, 1978.

The Board also found that "motivation may well be a problem." Finding of Fact No. 11. However, Dr. Esch stated that: "If he complained of pain, I would have to go along with him." Also, the doctor agreed with the statement that, because petitioner's symptoms had not changed since 1975, this would be persuasive that his condition was not getting any better.[4]

Finally, the Board stated that:

Further testimony revealed that petitioner had attempted to work at several different jobs (truck driver, delivery of office machines), but that he quit these jobs after several weeks due to continuing pain in his ankle. The only recreational activities undertaken by petitioner consisted of going to the park and attending movies "sometimes." Petitioner stated that the "majority of my time is spent right in the apartment."

He apparently will not hurt himself if he returns to work. Furthermore, it is strongly indicated that his condition has improved and will continue to do so ... according to the medical evidence, [he] can run. [Finding of Fact No. 13.]

As to petitioner's ability to go back to "regular duty but not street duty," Dr. Esch testified:

I don't think it would be fair to expect this man to jump out of a scout car and chase a juvenile through the woods .... He could hurt himself, but there are other regular duty jobs that wouldn't involve running and chasing people.

There was no medical evidence from Dr. Esch or any previous medical examination that petitioner could run. Dr. Esch was unable to comment upon whether petitioner's condition had improved since 1975, and he indicated that his condition may not have improved at all due to continuing complaints of pain.[5]

Based on all the evidence of record, we conclude that the Board's findings of fact are not supported by and in accordance with reliable, probative and substantial evidence in the whole administrative record. *First Baptist Church v. District of Columbia Board of Zoning Adjustment,* D.C.App., 432 A.2d 695, 699 (1981); D.C.Code 1973, § 1–1509(e). We reverse the Board's decision, and it is ordered that petitioner's annuity be reinstated retroactive to the date of its termination. *Kea, supra* at 176.

*Reversed.*

---

**5.** As mentioned earlier, the Board placed a great deal of emphasis on the comment by Dr. Franks that: "He walks on the toes with an exaggerated limp. He is observed to walk with a normal gait when fully dressed and unaware he is being observed." Report of Dr. Franks, November 21, 1978. Finding of Fact No. 5. However, when asked about the "significance of that statement," Dr. Esch replied: "I wouldn't want to try and interpret that. I don't know."