James L. LIBERTY, Petitioner,

v.

DISTRICT OF COLUMBIA POLICE AND FIREMEN'S RETIREMENT AND RELIEF BOARD, Respondent.

No. 80-406.

District of Columbia Court of Appeals.

Submitted Aug. 18, 1981.

Decided Nov. 22, 1982.

Michael J. Grealy and Raymond J. Malloy, Washington, D.C., were on the brief for petitioner.

Judith W. Rogers, Corp. Counsel, Washington, D.C., with whom Charles L. Reischel, Deputy Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., were on the brief for respondent.

Before NEBEKER and MACK, Associate Judges, and GALLAGHER, Associate Judge, Retired.

PER CURIAM:

Petitioner challenges as unsupported by substantial evidence the findings and conclusions of the Police and Firemen's Retirement and Relief Board (the Board)

that his permanent employment disability was neither caused nor aggravated by his performance of duties as a patrolman. We affirm.[1]

Former Metropolitan Police Department Officer James L. Liberty, petitioner, appears before this court for the second time. In an earlier appeal, *Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board,* D.C.App., 410 A.2d 191 (1979), petitioner argued that certain findings of the Board were unsupported by substantial evidence. The Board had concluded that petitioner was not entitled to the greater pension benefits afforded those policemen retired by reason of employment-related disability because, *inter alia,* "the most significant factor" causing petitioner's coronary heart condition was family history, and "police duties played no part" in the development of his disability. That division agreed with petitioner that the record did not support these findings, but it was unable to determine whether the Board would have reached the same conclusions of law and decision without relying upon them. Thus, the case was remanded for further proceedings. *Id.* at 193–94.

The Board conducted a second hearing on December 13, 1979, and on April 7, 1980, reaffirmed its decisions that (1) petitioner is disabled from further police employment, and (2) his disability was not caused by the performance of duty. On April 23, 1980, petitioner filed a petition for review of the Board's determination. Shortly thereafter, both parties requested further remand to the Board for additional findings in light of this court's subsequent holding that disability retirement is warranted only where an employee is unable to perform not only his

last assignment, but in any position in the police and fire department in the same grade or class. *See Seabolt v. District of Columbia Police and Firemen's Retirement and Relief Board,* D.C.App., 413 A.2d 908, 912 (1980); *see generally, Whitehurst v. District of Columbia Police and Firemen's Retirement Board,* D.C.App., 418 A.2d 1028 (1980). We ordered a remand and on November 3, 1980, the Board issued revised findings of fact and conclusions of law, and again found petitioner disabled from further police employment but not because of, nor aggravated by, the performance of duty. Petitioner's reinstated his petition.

The relevant facts of petitioner's medical and employment history are set forth in the earlier opinion, *Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board, supra* at 192, and supplemented more fully below pursuant to the Board's subsequent hearings on remand. To summarize, petitioner's disability resulted from ectasia of the coronary arteries, a disease causing the arteries to dilate and slow the passage of blood, thereby increasing the risk of blood clots. The Board ordered petitioner's retirement; the question was whether petitioner's ectasia occurred because of his employment as a patrolman,[2] thereby entitling him to higher annuity benefits. The Board determined at both the original hearing and the remand that the cause of coronary heart disease is unknown, and could only identify significant contributing "risk factors," such as family history, cigarette smoking, obesity, cholesterol, hypertension and stress. The evidence indicated that petitioner had some history of hypertension in his family,

---

1. Subsequent to submission of the proceeding to this court for decision, counsel for petitioner filed a notice of Death of Petitioner but asserted this did not moot this case because of the economic effect it would have (one way or the other) on petitioner's estate. Consequently, we have proceeded to a decision on the merits.

2. In *Stoner v. District of Columbia Police and Firemen's Retirement and Relief Board,* D.C. App., 368 A.2d 524, 527–28 (1977), we explained the statutory standard set forth in D.C. Code 1973, § 4–527(1) and (2):

        Section 4–527 provides for an annuity where the officer is disabled by injury or disease incurred as a result of his service, or where his continued duty aggravates a service-connected disease or injury to the point of disability. Section 4–527(2) provides for an annuity if, where the cause of the disabling injury is doubtful or external to the service, the claimant affirmatively shows that the condition became disabling as a result of service-related aggravation.

smoked a pack and one-half of cigarettes each day for ten years, has high cholesterol and hypertension, and was continually overweight for the five years preceding his disability. The Board concluded that petitioner's disease was neither caused nor aggravated by his employment.

In contrast to his first appeal challenging specific findings of the Board as unsupported by substantial evidence, petitioner argued that the record as a whole sustains the following, alternate findings: (1) police duties did contribute to the development of his condition; (2) other causative factors did not clearly outweigh the contribution of police duties to the development of his condition; and (3) petitioner's police duties aggravated his condition to the extent that he became permanently disabled. Petitioner specifically argues that stress is a condition of police employment and directly contributed to the "risk factors" associated with his disability, including his increased smoking and hypertension. He also argues that shiftwork and irregular hours of police work cause police officers to eat so-called junk food or "fast foods" high in cholesterol and fat-content, contributing to his obesity. Petitioner discounts heredity as a factor because his family has no history of heart disease and contends that symptoms of ectasia occurred only during times of exertion as a patrolman. He finally argues that on-duty pressures rather than any preexisting vulnerability to coronary heart disease precipitated, or else aggravated to permanent disability, his heart condition.

An agency's findings of fact are conclusive on this court if supported by substantial evidence in the record. *Proulx v. District of Columbia Police and Firemen's Retirement and Relief Board,* D.C.App., 430 A.2d 34, 35 (1981); *Neer v. District of Columbia Police and Firemen's Retirement and Relief Board,* D.C.App., 415 A.2d 523, 525–26 (1980); *Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board, supra.* If the agency could fairly and reasonably find the facts, *Proulx v. District of Columbia Police and Firemen's Retirement and Relief Board, supra,* this court "must affirm its action even

though we might have reached a different result, for it is not the function or authority of the reviewing court to superimpose its opinion upon the legitimate action of an administrative agency." *Coakley v. District of Columbia Police and Firemen's Retirement and Relief Board,* D.C.App., 370 A.2d 1345, 1347–48 (1977). *See Washington Post Co. v. District Unemployment Compensation Board,* D.C.App., 377 A.2d 436, 439 (1977) (reviewing court bound by agency decision supported by substantial evidence even though court may have reached contrary result based upon independent review of record); *Shay v. District of Columbia Board of Zoning Adjustment,* D.C.App., 334 A.2d 175, 178 (1975) (reviewing court cannot supplant judgment of administrative board despite persuasive reasons to the contrary).

■ Applying this standard of review, we must reject petitioner's alternate findings. His lengthy perusal of the record for support of his contentions ignores the question whether the Board could have reasonably found the facts as it did. *Proulx v. District of Columbia Police and Firemen's Retirement and Relief Board, supra.* We turn now to consider the Board's findings.

The etiology, or cause, of petitioner's coronary heart disease is essentially a medical question. Dr. W. Howard Yeager, a member of the Board of Police and Fire Surgeons, testified at both hearings. At those hearings he stated that the causes of ectasia of the coronary arteries are generally unknown. Specifically, he could not say what caused petitioner's disease. Although certain "risk factors," such as heredity, obesity, smoking, high cholesterol and hypertension play a part, Dr. Yeager stated that he could not say whether "it's specifically this, this, or this" that disabled the petitioner. Virtually each of these factors was part of petitioner's medical and physical diagnosis, yet Dr. Yeager could not say whether job-related stress caused these conditions. Moreover, petitioner's attempt to link employment activities with recurrence of his disease is belied by his own testimony that he "wouldn't have to be doing anything in

particular for the pain just to come on." Additionally, despite the absence of heart disease in petitioner's family history, the evidence showed that petitioner's mother did suffer from hypertension, a fact of significance given that petitioner's disease is so "rare" that Dr. Yeager believed "there must be something in his [genetic] makeup which caused this."

This evidence provides substantial support for the Board's conclusion that petitioner's disability was not job-related. Furthermore, the record also sustains the Board's rejection of petitioner's arguments that his smoking, obesity, and high cholesterol were caused or aggravated by employment-related conditions. Dr. Yeager's testimony as to the singular effects of irregular working hours, "fast foods," and the inherent stress of police work upon petitioner's obesity, smoking habit, high cholesterol and hypertension was tentative at best. Dr. Yeager recognized that police work entails stress but also noted that "every job has stress." As for petitioner's particular employment in southeast Washington, D.C., Dr. Yeager testified only that it "could have" affected his disability and "might" be a factor contributing to petitioner's hypertension and heart disease. Dr. Yeager stated generally that stress influences the amount of an individual's cigarette smoking, but the record fails to show that petitioner, who had smoked before employment as a patrolman, in fact increased his smoking habit as a result of duty-related stress. Similarly, Dr. Yeager testified merely that a "possible" contributing factor to petitioner's obesity "could be" the fast food eaten during shiftwork; again, the record does not indicate that job stress caused petitioner to overeat or to eat food high in fat-content. The Board was entitled, as it did, to accord little weight to the tenuous connections between petitioner's coronary heart disease and the contribution of myriad medical factors only tentatively related to conditions of petitioner's employment, and plainly unsupported by specific evidence that his employment caused or aggravated these factors.[3]

On the record as a whole, see *Proulx v. District of Columbia Police and Firemen's Retirement and Relief Board, supra* at 35, the Board's findings that petitioner's disability was neither caused nor aggravated by his performance of duty is supported by substantial evidence.

Accordingly, the decision on review is hereby

*Affirmed.*

---

**3.** Substantial doubt exists as to whether ordinary job-related stress or work conditions may be considered as contributing to employment disability. *See Neer v. District of Columbia Police and Firemen's Retirement and Relief Board, supra* at 526, n. 2 ("vague allegations of general job stress arising from the inherent nature of police and or firefighting are not susceptible to proof as a service-related causative factor leading to a disability"). Even if stress or work conditions theoretically are causative factors within the meaning of D.C. Code 1973, § 4–527(1) and (2), on this record the Board could conclude that no such connection was substantially shown.