**Joyce J. ARTHUR, Petitioner,**

v.

**DISTRICT OF COLUMBIA NURSES' EXAMINING BOARD, Respondent.**

**No. 82–114.**

District of Columbia Court of Appeals.

Argued Jan. 11, 1983.
Decided March 29, 1983.

Joan Gauche, for petitioner. Edward Rosenthal, Washington, D.C., also entered an appearance for petitioner.

Diana M. Savit, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before BELSON and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

The District of Columbia Nurses' Examining Board (the Board) charged petitioner, a registered nurse, with professional misconduct[1] and after a hearing imposed a two year suspension of her license. Petitioner challenges the Board's decision, arguing that the Board (1) failed to provide adequate notice of the charges against her; (2) improperly restricted cross-examination of an adverse witness; (3) lacked substantial evidence in the record to support its findings of fact and conclusions of law; and (4) abused its discretion in imposing a two year penalty. We affirm.

At 11:00 p.m. on February 9, 1980, petitioner, employed by a temporary help agency, began work on the night shift at Capitol Hill Hospital, 700 Constitution Avenue, N.E. Joanne Beard was the charge or head nurse on the floor during petitioner's shift. The standard procedure for controlling drugs at the hospital included counting all narcotics at the beginning and end of each shift in the presence of both incoming and outgoing head nurses. Because the smallest unit of the narcotic drug demerol[2] was 50 mg., when a lesser amount was needed the surplus was required to be "wasted" in the presence of another nurse, who would then sign the control sheet. The nurse who obtained the drug was responsible for ensuring that another nurse witnessed the disposal procedure.

The following morning at 7:00 a.m., the incoming nurse questioned Beard regarding a narcotics control sheet entry indicating that petitioner had given 25 mg. of demerol to Margaret Lee, a patient in Room 4154, but failed to obtain the requisite signature attesting that another nurse had witnessed the disposal of the surplus 25 mg. Beard began to sign the control sheet, but when asked if she had seen petitioner waste the demerol, replied that she had not and crossed out her signature. Later that morning the head nurse on the floor discovered that Margaret Lee had not received any demerol and that her prescription for it had expired two weeks earlier. On the following day, petitioner explained to J. Stanko, the Associate Director of Nursing, that she had examined the wrong patient's records, and after realizing the mistake, had wasted the entire 50 mg. Petitioner admitted that she "failed to have [the] correct amount witnessed" when she discarded the medicine.

After an internal investigation the hospital contacted Detective Paul Ponzelli of the Metropolitan Police Department Narcotics Branch. Ponzelli had arrested appellant on a drug charge three years earlier for which she was, at the time of the hearing, on probation with the Board.[3] His investiga-

---

1. D.C.Code § 2–407 (1978 Supp. V). The specification of the charge was that petitioner "obtained for her own use 50 mg. of demerol, a narcotic drug, on the pretext that the drug was to be administered to a patient."

2. Demerol is a Schedule II controlled substance. *See* D.C.Code §§ 33–515, –516 (1982 Supp.).

3. On May 4, 1977, petitioner, then employed as a nurse at Greater Southeast Community Hospital, injected herself with 30 mg. of Talwin (now a Schedule II controlled substance) and was treated for a drug overdose. On May 18, 1977, she was charged with embezzlement of hospital property, but successfully completed a rehabilitation program and the charges were dropped.

On October 17, 1979, the Board, following a hearing, placed petitioner on probation for charges arising from the May 4, 1977 incident. The conditions of the year-long probation included submission of quarterly reports from her employer. The Board was to review petitioner's status on October 17, 1980.

tion revealed that Margaret Lee's demerol prescription had expired prior to February 10, 1980, and could not be renewed without physician approval, which petitioner had not obtained. Ponzelli also discovered that petitioner had not administered the drug to Lee and no one had witnessed its disposal. Based upon his investigation, an indictment filed on March 20, 1980, charged petitioner with multiple counts of forging prescriptions and fraudulently obtaining narcotics.[4]

On June 26, 1980, the Board notified petitioner that it proposed to suspend or revoke her nursing license for professional misconduct on grounds that she "obtained for her own use 50 mg. of demerol, a narcotic drug, on the pretext that the drug was to be administered to a patient in Room 4154." The Board held a hearing on April 29, 1981.[5] Petitioner testified that Beard had told her that the patient in Room 4154, Margaret Lee, needed a shot for pain. Petitioner checked the patient's records, found an expired demerol prescription and asked Beard to call the house doctor and request a renewal. Although petitioner concededly retained "ultimate responsibility" to assure that the prescription was reordered and Beard "never indicated whether she would or wouldn't" speak with the house doctor, petitioner nevertheless obtained the 50 mg. of demerol. Petitioner conceded that she "should have checked to see [that] the order was written." She also conceded that even if Lee's prescription had been renewed, it required intravenous (IV) administration by a physician, not a nurse. While petitioner intended to give the injection intramuscularly (IM), she admitted that she could not have done so because the patient's prescrip-

tion was demerol IV and she "could not pull the medication unless that order was completely rewritten."

Petitioner testified that after securing the demerol, she discarded the surplus 25 mg. by squirting it into the air, although the proper method of disposal is to pour it down the drain in the presence of another nurse. She thought that Beard had seen her waste the surplus. Petitioner further testified that she proceeded to Room 4154 and found Lee asleep, and therefore did not administer the demerol but returned to Beard and asked if Lee was the patient who had requested the medication. Beard, according to petitioner, stated, "I only relay messages." Petitioner said that she placed the tube with the remaining 25 mg. of demerol in her uniform pocket and continued her rounds. Although carrying demerol in her pocket contravened standard hospital procedure, petitioner thought she might "run into" the actual person who had called for the drug. At the end of the shift, petitioner, according to her testimony, wasted the remaining 25 mg. of demerol by shooting it into the air, again believing that Beard and the day nurse had observed the action.

Nurse Beard testified that she did not tell petitioner that the patient in Room 4154 needed something for pain. Beard stated that neither she nor to her knowledge any other nurse witnessed the discarding of the demerol.

On July 27, 1981, the Board suspended petitioner's nursing license for two years, finding, *inter alia,* that petitioner was not a credible witness[6] and that 50 mg. of demer-

4. Detective Ponzelli cited six other instances in which petitioner allegedly obtained narcotics and failed to administer them to patients, all occurring during the preceding month. The Board, however, charged petitioner with only a single count of obtaining demerol for her own use.

5. The Board had scheduled a hearing for September 19, 1980, but granted petitioner a six-week continuance to defend against the related criminal charges. Subsequent postponement of the criminal trial resulted in further continuance of the administrative proceeding after petitioner agreed not to practice as a nurse until

the Board's final decision. After acquittal of the criminal charges, the Board set a hearing date for April 8, 1981. Petitioner, however, requested a further continuance because her attorney was occupied with another trial. After petitioner consented to relinquish her license pending the outcome of the hearing, the Board agreed to a continuance.

6. In its findings of fact, the Board stated that petitioner's credibility was "greatly diminished" because she testified—contrary to Beard—that Beard had told her the patient in Room 4154 needed medication; because petitioner stated that she had failed to assure that Beard

ol was "unaccounted for, was not wasted in the air, was not administered to any patient at Capitol Hill Hospital [and] could not have been administered by a nurse but only by a physician." The Board concluded that petitioner "on February 10, 1980, while on duty at Capitol Hill Hospital unlawfully possessed and had under her control a quantity of narcotic drug, 50 mg. of demerol on the pretext that the drug was to be administered to the patient in Room 4154."

▇▇▇ Petitioner argues that the Board failed to provide adequate notice of the charges against her because it alleged that she "obtained for her own use 50 mg. of demerol" but concluded that she "unlawfully possessed and had under her control . . . 50 mg. of demerol." We disagree. While an agency may not change theories in midstream without affording reasonable notice of the change, *Rodale Press, Inc. v. Federal Trade Commission,* 132 U.S.App.D.C. 317, 321, 407 F.2d 1252, 1256 (1968); *NLRB v. Johnson,* 322 F.2d 216, 219–20 (6th Cir. 1963), *cert. denied sub nom. Taylor v. Johnson,* 376 U.S. 951, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964), the Board did not alter its theory of professional misconduct. A charge of obtaining narcotics for one's own use as-

sumes improper—and thus unlawful—possession and control. The evidence at the proceeding indicated that petitioner's conduct consistently failed to comport with standard hospital procedures governing possession and use of narcotics. From this evidence the Board could properly infer that petitioner unlawfully obtained the demerol for her own, and not the hospital's benefit. Hence, "reasonable notice was afforded concerning the nature of the hearing and the issue involved." *Russell v. District of Columbia Board of Zoning Adjustment,* 402 A.2d 1231, 1234 (D.C.1979).

▇▇▇ Petitioner argues that the Board improperly restricted cross-examination of Beard[7] when she attempted to question Beard regarding prior statements made to an investigator. Such statements concerned the reasons why Beard initially had signed the control sheet indicating that she had witnessed petitioner waste the 25 mg. of demerol but then changed her mind and scratched out her signature. The Board sustained objection to this line of questioning on grounds of relevancy.

▇▇▇ D.C.Code § 1–1509(b) (1981) provides that every party to an agency pro-

had seen her discard the demerol; and because petitioner, already on probation, had hedged and evaded answering questions at the proceeding.

7. Petitioner also contends that the government's failure to inform her that Joanne Beard would testify deprived her of reasonable notice of the issues to be heard. At the outset of the proceeding, petitioner's counsel objected to Beard's proposed testimony because the assistant corporation counsel had told her that another nurse, not Beard, would testify. The assistant corporation counsel explained that she had also been misinformed as to the appropriate witness and only later learned that Beard, who had testified at petitioner's earlier criminal trial, should testify at the Board proceeding. Although petitioner's counsel had also represented petitioner at trial, she argued that lack of notice affected her ability to cross-examine Beard based upon Beard's prior statements both to counsel's investigator and at trial because she had neither obtained a transcript of the criminal proceeding nor arranged for the investigator to testify. Petitioner's counsel therefore requested permission to submit an affidavit at a later time. The assistant corporation counsel disagreed, finally asking counsel to

defer objection until later in the proceeding, to which she agreed. Thereafter, petitioner's attorney did not further object to Beard's testimony or at any time assert prejudice. Nor did she request a continuance of the proceeding in order to introduce Beard's prior statements. Petitioner submitted a Memorandum in Summary of Evidence and Aid in Disposition and did not raise the question; a Petition for Reconsideration filed after the Board's decision also did not address the issue.

Failure to challenge a ruling at the administrative level, the consequences of which could arguably have been avoided, may not form the basis for overturning a decision on review. *See DeLevay v. District of Columbia Rental Accommodations Commission,* 411 A.2d 354, 358 (D.C.1980); *1880 Columbia Road, N.W., Tenants' Association v. District of Columbia Rental Accommodations Commission,* 400 A.2d 333, 339 (D.C.1979); *John D. Neumann Properties, Inc. v. District of Columbia Board of Appeals and Review,* 268 A.2d 605, 606 (D.C.1970). Petitioner failed to afford the Board sufficient opportunity to consider the prejudice which may have resulted from lack of timely notice and is thereby precluded from raising this question on review.

ceeding has the right to "conduct such cross-examination as may be required for a full and true disclosure of the facts." *Cf. Babazadeh v. District of Columbia Hackers' License Appeal Board,* 390 A.2d 1004, 1008 (D.C.1978) (principles of due process and administrative procedure require opportunity to confront adverse witness). Although relevancy provides a basis for excluding evidence, D.C.Code § 1–1509(b) (1981), Beard's conflicting statements affected her credibility, plainly a pertinent consideration in determining whether she had witnessed petitioner waste the demerol or in evaluating her denial that she did not tell petitioner Margaret Lee required medication. Thus, the Board's failure to permit cross-examination relating to Beard's credibility constitutes error.

█ This court, however, "may invoke the rule of prejudicial error" in reviewing administrative decisions. D.C.Code § 1–1510 (1981); *see Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board,* 410 A.2d 191, 194 (D.C. 1979); *Jameson's Liquors, Inc. v. District of Columbia Alcoholic Beverage Control Board,* 384 A.2d 412, 419 (D.C.1978). Hence, reversal and remand is required only if substantial doubt exists whether the agency would have made the same ultimate finding with the error removed. *Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board, supra,* 410 A.2d at 194; *Braniff Airways, Inc. v. C.A.B.,* 126 U.S.App.D.C. 399, 412, 379 F.2d 453, 466 (1967). On this record we are satisfied that the Board's finding of professional misconduct was unaffected by the erroneous curtailment of cross-examination. Petitioner's own testimony supports the Board's conclusion that she unlawfully possessed and had under her control 50 mg. of demerol. It was conceded that she needed a written authorization to administer demerol to Margaret Lee, which she did not have; she conceded also that she could not have injected the drug in any event because a nurse cannot administer demerol IV; and she was aware that the expired prescription required demerol IV, not IM. In addition,

petitioner admitted that Beard never agreed to seek renewal of the prescription, yet she nonetheless obtained the demerol ostensibly for Margaret Lee. Moreover, petitioner also admitted both to the Associate Director of Nursing and at the hearing that she had failed to ensure that another nurse witnessed the disposal of the surplus demerol, thereby violating standard hospital procedure. Thus, substantial evidence independently supports the Board's finding that petitioner unlawfully possessed and had under her control a quantity of demerol, and accordingly, remand is not required. *Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board, supra,* 410 A.2d at 194.

█ Petitioner argues that the Board's findings are vague, misleading and contradictory, and therefore unsupported by substantial evidence. An agency must articulate its reasons for decision by demonstrating a rational connection between the findings and the end result. *Tenants Council of Tiber Island-Carrollsburg Square v. District of Columbia Rental Accommodations Commission,* 426 A.2d 868, 872 (D.C.1981); *Communications Workers of America v. District of Columbia Commission on Human Rights,* 367 A.2d 149, 152 (D.C.1976); *Dietrich v. District of Columbia Board of Zoning Adjustment,* 293 A.2d 470, 473 (D.C.1972). Our review of the record indicates that not only does petitioner's own testimony supply substantial evidence to uphold the Board's conclusion that she unlawfully possessed a quantity of demerol, but the Board's allegedly inconsistent findings properly concern either credibility or are subsidiary to its conclusions. Petitioner argues, for example, that the Board without rational basis rejected her explanation that she did waste the demerol by squirting it into the air. The general rule, however, is that on questions of credibility "the fact-finding of hearing officers is entitled to great weight." *In re Dwyer,* 399 A.2d 1, 12 (D.C. 1979); *see Monaco v. District of Columbia Board of Zoning Adjustment,* 409 A.2d 1067, 1070 (D.C.1979) (agency not required to explain why it favored one witness over

another). The Board specifically found that petitioner was not a credible witness, *see supra* note 6, and was entitled to discredit her testimony when in contradiction with other evidence. *See id.* (petitioner and Beard disagreed whether Beard said that patient in Room 4154 needed something for pain; Board credited Beard's testimony). Petitioner's other challenges to the Board's findings concern inconsistencies regarding, *inter alia,* what time she left work on February 10, precisely when she obtained possession of the demerol, or the exact amount of demerol she carried in her uniform pocket during the shift. Even if erroneous, these findings are " 'demonstrably subsidiary' " and would not require reversal. *Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board, supra,* 410 A.2d at 194 (quoting *Braniff Airways, Inc. v. C.A.B., supra,* 126 U.S.App.D.C. at 412, 379 F.2d at 406). Hence, on the record as a whole a rational connection exists between the Board's findings of fact and its end result. *Tenants Council of Tiber Island-Carrollsburg Square v. District of Columbia Rental Accommodations Commission, supra,* 426 A.2d at 872.

 Finally, petitioner contends that the Board abused its discretion either in suspending her license for two years or in failing to make suspension retroactive to the point at which she agreed to discontinue practice as a registered nurse pending disposition of the Board's charges. *See supra* note 4. We disagree. A licensing agency has broad discretion to suspend or revoke a license for reasonable cause in order to protect public health, safety, or morals. *Proctor v. District of Columbia Hackers' License*

*Appeal Board,* 268 A.2d 267, 269 (D.C.1970). Employed as one of the caretakers of the healing profession and, as a result, entrusted with management and use of narcotic drugs helpful when properly used and harmful when not,[8] a registered nurse is held to a standard of conduct commensurate with his or her professional status. Petitioner was on probation from an earlier drug related offense. *See supra* note 2. The Board's findings indicate that she again improperly obtained and otherwise misused a narcotic in contravention of professional nursing standards. In view of the totality of the circumstances, the Board could have revoked petitioner's license for such conduct; *a fortiori,* suspension for a two year period is plainly within the scope of its authority. *Cf. Kegley v. District of Columbia,* 440 A.2d 1013, 1020 n. 11 (D.C.1982). Moreover, the Board was not required to impose retroactive suspension. Petitioner ceased practice as a registered nurse not as a result of sanction but because of her decision to request continuances in the criminal proceedings for her own reasons. Upon careful review of the record we cannot say that the Board abused its discretion in the imposition of a two year suspension of petitioner's nursing license. *See Proctor v. District of Columbia Hackers' License Appeal Board, supra,* 268 A.2d at 269.

*Affirmed.*

---

**8.** *See* D.C.Code § 33–515 (1982 Supp.) (regulating narcotic substances having both "currently accepted medical use" and "high potential for abuse").